ANIMALS (§ 14*)—DRIVING FROM RANGE—DEFENSE—EVIDENCE.

In a prosecution for willfully driving a Jersey bull from his accustomed range, it was no defense that defendant did the act charged in order to protect his Hereford cows from being served; and evidence of the difference in value between calves of Hereford cows from a Hereford sire and from a Jersey sire was properly excluded.

[Ed. Note.—For other cases, see Animals, Cent. Dig. §§ 26–29; Dec. Dig. § 14.*]

Appeal from Floyd County Court; Arthur B. Duncan, Judge.

T. H. Buster was convicted of willfully driving cattle from their accustomed range, and appeals. Affirmed.

T. F. Houghton, of Floydada, for appellant. C. E. Lane, Asst. Atty. Gen., for the State.

HARPER, J. Appellant was prosecuted and convicted of the offense of willfully driving cattle from their accustomed range.

The evidence would show that Mr. Elliott owned some cattle, one of which was a Jersey bull. No stock law being in force, he turned them out on the range. Appellant also owned cattle, which he turned out on the range. His cattle were Herefords, and he objected to Elliott permitting his Jersey bull to run at large, and, after driving the bull from off his leased but unfenced land several times, he finally drove him off and put him in a pasture where the Jersey bull was castrated. Appellant does not deny driving the bull off and putting it in a pasture, but says he did so to protect his cattle, to keep the bull from serving his Hereford cows. He offered to prove by several witnesses the difference in value of calves from Hereford cows from a Hereford sire and from a Jersey sire. There was no error in excluding this testimony, as it was not an issue in the case. As the stock law was not in force, each man had a right to turn his cattle out on the commons to graze, and, if appellant objected to his cattle running with Elliott's cattle, he should have put his cattle in a pasture, and not driven Elliott's cattle off and put them in a pasture. Elliott was using his cattle in a lawful way, and, so long as he was doing so, appellant had no right to interfere with them. The issue of protecting his property does not arise under such state of facts. Elliott was not seeking to injure appellant's cattle, nor did he do any legal wrong in turning them out on the commons to pasture. Appellant could have fenced his land, and then, if Elliott's male had gotten in his inclosure, he would have had the right to eject him from such inclosure.

All the questions presented hinge around this proposition: That as he wanted his cattle to run at large, and did not want them served by a Jersey male, he claims the right to drive off Elliott's bull and put him in a pasture. He had no such right, and the judgment must be affirmed.

---

## ALDAMA v. STATE.

(Court of Criminal Appeals of Texas. Feb. 11, 1914.)

1. LIBEL AND SLANDER (§ 152*)—CRIMINAL PROSECUTION — SUFFICIENCY OF EVIDENCE.

Pen. Code 1911, arts. 1151, 1157, declares one guilty of libel who, with intent to injure, publishes or circulates any malicious statement that any officer or candidate for office is dishonest and therefore unworthy of office, and articles 1165, 1166, declare it no offense to make true statements of fact or to express opinions as to the integrity or qualifications of another for any office or profession. The indictment charged defendant with having published a malicious statement of and concerning one Villegas, affecting his reputation, in .that he referred to a paper in which Villegas had proposed a ridiculous question as to who was

the candidate of the People's Party for mayor, and then stated that Villegas was the heir to a fortune; had studied science; and had studied military affairs, learning only to do half a turn; had studied four years in law school, at the end of which time his father was compelled to purchase for him a law license, to which profession he could not dedicate himself, because he never knew what law was; that he was naturally stupid, and had not inherited the integrity and industry of his father; that he inherited his brother's wife and part of his fortune; and that, not wishing to hurt his modesty, of which he makes so much fuss, nothing would be said of his private life. *Held*, that the indictment charged no offense.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 417, 419–424, 426, 427; Dec. Dig. § 152.*]

2. LIBEL AND SLANDER (§ 156*)—CRIMINAL PROSECUTION—SUFFICIENCY OF EVIDENCE.

In view of Pen. Code 1911, arts. 1151, 1157, defining libel in respect to statements affecting the reputation of candidates for office, professional men, etc., and making truth a defense to statements as to their qualifications, evidence in a prosecution for libel affecting reputation of a candidate *held* insufficient to sustain a conviction.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 437–441; Dec. Dig. § 156.*]

Appeal from District Court, Webb County; J. F. Mullally, Judge.

P. Aldama was convicted of libel, and he appeals. Reversed, and cause dismissed.

A. Winslow, of Laredo, for appellant. C. E. Lane, Asst. Atty. Gen., for the State.

PRENDERGAST, P. J. Appellant was indicted for libel. The indictment charges that on March 30, 1912, appellant, with the intent to injure Leopoldo Villegas, did unlawfully and maliciously make, publish, etc., a malicious statement of and concerning said Villegas and affecting the reputation of the said Villegas to the tenor following, to wit: Then follows what purports to be certain matter in Spanish. The indictment, after copying the Spanish, continues, that said malicious statement is in the Spanish language and was published in a newspaper, naming it, of which appellant was the director, editor, and proprietor "and which said statement when translated from the Spanish into the English language is in substance and effect as follows:

" 'Who is the Mayor of the City?

" 'In the Sufragio Libre of Thursday, a newspaper whose motto is "Villega, of Villegas and for Villegas" the same Mr. Villegas, with that modesty which since some months ago has characterized him, makes himself the following ridiculous question: "Who is the candidate of the People's Party for mayor of the city?" Who am I? Well, who are you? Leopoldo Villegas, son of the old Villegas and heir to his fortune. He studied science in St. Mary's College in San Antonio and in St. Edward's College in Austin. He studied military matters in a military college

in New York where all he learned was to do half a turn (meaning about face). He studied four years in a law school, at the end of which time his father found himself compelled to purchase for him the title of a lawyer (meaning his father bought for him a law license or diploma); to which profession he never could dedicate himself because he never knew what law was. An old adage says: "From the smartest fathers are born the most stupid sons." And Mr. Villegas (meaning Leopoldo Villegas), who after his natural stupidity might have at least inherited the integrity and industry of his father, he only knew how to inherit a considerable fortune which modestly makes it ascend to seven million dollars, perhaps added to those of his deceased brother Lorenzo, from whom he not only got a good capital, but he also inherited from him his exquisite pleasure, finally * * * as of the family (meaning that Leopoldo Villegas not only got a good capital from his brother Lorenzo but he also inherited his brother Lorenzo's wife). Of his private life we will say nothing because we do not wish to hurt that modesty of which he makes so much fuss. Such is the candidate of the People's Party for mayor of the city.' "

[1, 2] The record in this case is very meager. It is sufficient to show simply this: That appellant had no attorney to represent him; that he didn't speak English; that the district attorney testified merely that he cut this Spanish statement, copied in the indictment, from the newspaper of appellant of which he was the editor, proprietor, etc., and that the translation into English as also copied in the indictment is substantially correct. Said Villegas merely testified that he had lived in Laredo all his life, and then exhibited and introduced in evidence a diploma or license from the Supreme Court of New York admitting him to practice law as an attorney in that state. And then exhibited a license from the Supreme Court of Texas, authorizing him to practice law in all the courts of Texas. That is substantially all of the evidence. The jury convicted appellant and fixed his punishment at six months' imprisonment in the county jail. After this he employed an attorney, who made a motion in arrest of the judgment, to the effect that the indictment charged no offense against the law.

Our statute on the subject is as follows:

"Art. 1151. He is guilty of 'libel' who, with intent to injure, makes, writes, prints, publishes, sells or circulates any malicious statement affecting the reputation of another in respect to any matter or thing pointed out in this chapter."

"Art. 1157. The written, printed or published statement, to come within the definition of libel, must convey the idea either—1. That the person to whom it refers has been

guilty of some penal offense; or 2. That he has been guilty of some act or omission which, though not a penal offense, is disgraceful to him as a member of society, and the natural consequence of which is to bring him into contempt among honorable persons; or 3. That he has some moral vice, or physical or mental defect or disease, which renders him unfit for intercourse with respectable society, and such as should cause him to be generally avoided; or 4. That he is notoriously of bad or infamous character; or 5. That any person in office, or a candidate therefor, is dishonest, and therefore unworthy of such office, or that while in office he has been guilty of some malfeasance rendering him unworthy of the place."

"Art. 1165. It is no offense to make true statements of fact or express opinions as to the integrity or other qualifications of a candidate for any office or public place or appointment.

"Art. 1166. It is no offense to publish true statements of fact as to the qualifications of any person for any occupation, profession or trade."

Appellant also made a motion for a new trial on the same grounds as his motion in arrest of judgment, and, in addition, contending that the evidence was wholly insufficient to sustain the conviction.

In our opinion the indictment charges no offense, and the evidence, even if the indictment charged an offense, does not prove any. Nothing stated in the publication is shown to be false in its criticism of him.

The judgment is therefore reversed, and the cause dismissed.